# CIRCUIT COURT OF LOUDOUN COUNTY

Cynthia Delle Goodin

    v.

John H. Goodin, Jr.

March 4, 1997

Case No. (Chancery) 16938

BY JUDGE JAMES H. CHAMBLIN

On January 13, 1997, the Court heard evidence and argument of counsel on the claim of Cynthia Delle Goodin for attorney's fees and costs for her defense of the claim by John H. Goodin, Jr., that their Separation and Property Settlement Agreement dated February 25, 1995, was unconscionable. She asserts her claim because, in the middle of this litigation, Mr. Goodin abandoned his unconscionability claim. She argues that his claim was frivolous, unfounded, and imposed for an improper purpose. Also, she argues that Mr. Goodin breached the Agreement when he objected to its incorporation in the final divorce decree.

For the reasons that follow, I find (1) that Mr. Goodin's unconscionability claim was unfounded and interposed for an improper purpose and (2) that, when he objected to the incorporation of the agreement in the final divorce decree, he breached the Agreement. Accordingly, Ms. Goodin is awarded attorney's fees and costs of $4,511.00 from Mr. Goodin as a sanction under § 8.01-271.1 and as costs and reasonable attorney's fees under paragraph 18(D) of the Agreement.

On February 25, 1995, the parties executed the Agreement. Neither was represented by counsel. Mr. Goodin prepared the Agreement. The form of it followed an earlier agreement prepared by an attorney when the parties had previously separated. The Agreement provided that their minor child, Jessica

Lee Goodin, would primarily reside with Ms. Goodin but that the parties would share joint legal custody. The Agreement required Mr. Goodin to pay child support of $225.00 per month, with $50.00 annual increases, to Ms. Goodin.

The Agreement also provided for the sale of the marital domicile (a house and two tenant cottages) with net proceeds divided 72.22% to Ms. Goodin and 27.88% to Mr. Goodin and Ms. Goodin to receive the monthly rent income from the tenants. Other real estate and personal property was also disposed of under the Agreement. The effect of the property division in the Agreement was to be an equal division.

About the time the Agreement was executed, Mr. Goodin moved to Oklahoma. Later, Jessica moved to Oklahoma to be with her father. Mr. Goodin stopped paying child support, and Ms. Goodin began paying him child support. Also, Mr. Goodin now wanted the rental income from the cottages because he had agreed to allow Ms. Goodin to receive the rent until the marital domicile was sold in order to keep down the amount of child support he was to pay.

Mr. Goodin filed a divorce suit in Oklahoma on or about March 19, 1996, in which he asked for a divorce, custody, child support, and property settlement but did not reveal the existence of the Agreement.

On March 26, 1996, Ms. Goodin filed this suit asking for a no-fault divorce, incorporation of the Agreement in the final decree of divorce, and an injunction restraining Mr. Goodin from proceeding with the Oklahoma divorce suit.

On April 5, 1996, after a hearing at which Ms. Goodin appeared with counsel and Mr. Goodin appeared by counsel, this Court found that it had personal jurisdiction over Mr. Goodin under the Long Arm Statute and enjoined him from proceeding in the Oklahoma suit on any matter related to the parties' property.

The Oklahoma court on April 15, 1996, declined to exercise jurisdiction over the parties' Virginia property or the Agreement but retained jurisdiction for the divorce, custody, and child support.

On April 17, 1996, Mr. Goodin filed an answer in this suit asserting that the Agreement is unconscionable and filed a Cross-Bill for a no-fault divorce, child support, and equitable distribution and asking the Court to set aside the Agreement as unconscionable. Ms. Goodin filed an answer to the Cross-Bill on April 22, 1996, in which she asserts that the unconscionability claim is frivolous and asks for sanctions. She also asks the Court to set a hearing on the unconscionability claim.

Ms. Goodin took depositions with proper notice for a no-fault divorce on April 23, 1996. On May 13, 1996, she filed a praecipe for the presentation of a final divorce decree and for a hearing on the unconscionability claim on July 15, 1996.

On May 14, 1996, Mr. Goodin submitted answers to interrogatories in which he withdrew his claim of unconscionability. On May 20, 1996, Ms. Goodin filed a motion for entry of a final decree of divorce incorporating the agreement (because Mr. Goodin withdrew his claim of unconscionability). She recognized that custody issues were being litigated in Oklahoma. At no time did Ms. Goodin ever attempt to have this Court take jurisdiction over custody and child support.

On May 24, 1996, Mr. Goodin filed an amended Answer and Cross-Bill which contained no unconscionability claim and asked for the Agreement to be incorporated in the final divorce decree except for the provisions as to custody and child support. The consent decree allowing this was not entered until June 17, 1996.

In her answer to the Amended Cross-Bill, Ms. Goodin again asked for an award of attorney's fees. On June 7, 1996, Ms. Goodin took further depositions for her no-fault divorce.

On June 21, 1996, Mr. Burke McCahill delivered to the Clerk's office for presentation to this judge a final divorce decree in this suit. The decree was endorsed by both counsel without any objections. The decree provided for a no-fault divorce to Ms. Goodin and incorporation of the Agreement except for the provisions as to custody and child support. On the same day, Ms. Ann Vance retrieved the decree from the Clerk's Office before it could be sent to this judge because Mr. Goodin changed his mind and now felt that the Oklahoma court on April 15, 1996 (by order entered April 29, 1996) had decided that this Court did not have jurisdiction over the divorce.

Within a few days, Ms. Vance filed a motion to continue the hearing set for July 15, 1996, and for leave to withdraw as counsel for Mr. Goodin. The motions were heard on July 2, 1996, at which time the motion for continuance was denied. Ms. Vance withdrew her motion for leave to withdraw as counsel for Mr. Goodin. On the same day, the final decree of divorce was entered. Ms. Vance noted only an objection to the divorce because of the April 29, 1996, order of the Oklahoma court.

The final decree of divorce granted Ms. Goodin a no-fault divorce, incorporated the agreement except for custody and child support, and reserved jurisdiction over her claim for fees related to his abandoned unconscionability claim. It also provided that the reasonableness of the hourly rate for attorney's fees would not be an issue by agreement of the parties.

The January 13, 1997, hearing was set on November 21, 1996. It was scheduled to start at 1:00 p.m., but this judge was presiding over a criminal jury trial at that time. This matter was heard starting about 4:30 p.m. when the jury went out and continued with several interruptions for the jury trial until about 7:00 p.m. The hearing took approximately one and one-half hours.

Considerable evidence was presented about the circumstances of the parties and the reasons for the provisions in the Agreement on February 25, 1995. There is no need to recite the evidence because none of it in any way supports a finding that on February 25, 1995, the Agreement was unconscionable. In fact, Mr. Goodin concedes this because he argues that the Agreement became unconscionable when Jessica came to live with him. His own testimony and his letter to Ms. Goodin in the late summer of 1995 (see Exhibit A to Answer to Cross-Bill filed April 22, 1996) after Jessica came to live with him shows that he wanted to renegotiate the Agreement so that he could get a portion of the rent. He felt that Ms. Goodin no longer needed it because she did not have Jessica and he was not paying her child support. Ms. Goodin refused to renegotiate.

Titles to the various properties have been changed in accordance with the Agreement. Mr. Goodin, therefore, accepted benefits under the Agreement which he claimed was unconscionable.

Mr. Goodin tries to deflect Ms. Goodin's breach of contract allegation by saying she breached the Agreement by not listing the property for sale until a year after the separation. Paragraph 9 of the Agreement provides that the property "shall be sold as soon as possible." All Mr. Goodin offered was a one-year delay in listing the property. Such a delay in and of itself does not show a violation of the above provision. Ms. Goodin did not breach the Agreement. Even if she did, it would be of no help to Mr. Goodin in his unconscionability claim.

Ms. Goodin incurred $4,500.00 in attorney's fees in Oklahoma. She had $1,000.00 in expenses for one trip to Oklahoma for court. Through January 10, 1997, Ms. Goodin incurred $3,909.00 in attorney's fees and $125.00 in costs and expenses with Mr. McCahill.

Mr. McCahill normally charges $500.00 in attorney's fees, and there are $73.00 in expenses and costs for a no-fault divorce. See Complainant's Exhibit 1.

Mr. Goodin incurred $2,500.00 in attorney's fees in the Oklahoma divorce suit. Up to January 13, 1997, he had incurred $2,122.50 in attorney's fees with Ms. Vance for this suit. See Defendant's Exhibit 1.

Mr. McCahill charges $175.00 per hour, and Ms. Vance charges $150.00 per hour.

Mr. Goodin testified that he withdrew his unconscionability claim because he was tired of paying attorney's fees and he did not want a long drawn-out court battle. All he wanted was an adjustment in child support because Jessica was living with him. He further testified that he followed the advice of his counsel to "ask this to get this."

When Mr. Goodin instructed his attorney not to allow the Agreement to be incorporated into a final decree of divorce, he clearly breached paragraph 17 of the Agreement which provides that it "may be introduced and submitted to the court for ratification, approval, and incorporation in" any divorce decree. He had no right to object to Ms. Goodin's request to incorporate the Agreement in the final divorce decree.

Paragraph 18(D) provides that if a party defaults in his obligations under the Agreement, the nondefaulting party shall be entitled to costs and all reasonable attorney's fees incurred in securing performance or damages from the defaulting party. Accordingly, Ms. Goodin is entitled to costs and fees incurred to secure incorporation of the Agreement in the final divorce decree.

Under § 8.01-271.1, Ms. Vance's signature on the Answer and Cross-Bill filed April 17, 1996, both of which allege that the Agreement is unconscionable, constituted her certification that to the best of her knowledge, information, and belief, the unconscionability claim was formed after reasonable inquiry, was well grounded in fact, and was not interposed for any improper purpose. If she filed the Answer and Cross-Bill after she knew or reasonably should have known that she could not create a factual issue as to the unconscionability alleged, then sanctions are justified. *Oxenham v. Johnson*, 241 Va. 281, 288 (1991). A duty of "reasonable inquiry" arises each time a paper or motion is filed.

It is basic fundamental law that any claim of unconscionability must be made based on the circumstances as they existed when the Agreement was executed. A party cannot make an unconscionability claim because circumstances changed thereafter. Mr. Goodin may feel that the Agreement was entered into improvidently by him, but that is no ground for relief from the provisions of the Agreement.

Mr. Goodin presented no evidence that in any way would support his unconscionability claim. Ms. Vance should have reasonably realized this before she filed the Answer and Cross-Bill. The only possible reason for making the unconscionability claim was one of leverage, to cause Ms. Goodin to acquiesce to Mr. Goodin's desire to modify the Agreement and increase child support rather than incur the expense of defending his unconscionability claim.

At least Mr. Goodin did decide not to pursue his claim before it went to a hearing. However, he offered no valid reason for this decision, and Ms. Goodin still had to incur attorney's fees to defend his claim until he abandoned it.

Mr. Goodin's fees are irrelevant. He gets no consideration merely because he incurred attorney's fees himself for the same reason he gets no consideration because he says he acted on advice of counsel. His letter in the summer of 1995 to Ms. Goodin shows that he knew exactly what he was doing. He knew he was claiming unconscionability merely to gain an advantage.

For the foregoing reasons, Mr. Goodin shall pay attorney's fees and costs of $4,511.00 on or before April 1, 1997. This amount is the attorney's fees and costs of $4,034.00 incurred by Ms. Goodin through January 10, 1997, *less* $573.00 in standard fees and costs normally charged by Mr. McCahill to file a divorce suit, *plus* six hours at $175.00 per hour for the hearing on January 13, 1997. The fees and costs are assessed pursuant to paragraph 18(D) of the Agreement and § 8.01-271.1.

Six hours have been allowed for January 13, 1997, because it was not Ms. Goodin's fault that she and her counsel had to wait to be heard. Also, she should not have had to go through such a hearing because Mr. Goodin and his counsel should have realized that he was not going to prevail. The six hours is allowed based on the representation of Mr. McCahill that he would charge his client for the time between 1:00 p.m. and 7:00 p.m. If, in fact, Mr. McCahill charges Ms. Goodin for less than six hours on January 13, 1997, then the fee allowed here will be adjusted to the time actually charged.

No fees or expenses are allowed Ms. Goodin for the Oklahoma litigation. She offered no evidence of what part of her fees and expenses related to the Agreement. The Oklahoma court did not award any fees. The Agreement did not prohibit Mr. Goodin from filing a divorce suit in Oklahoma.

Ms. Goodin is allowed all her fees and expenses incurred in this suit over and above what Mr. McCahill would have charged her for a no-fault divorce incorporating the Agreement in the final divorce decree. If Mr. Goodin had complied with the Agreement instead of contesting it, then Ms. Goodin would have obtained a divorce as aforesaid for only $573.00